UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

TELEMUNDO NETWORK GROUP, LLC,

      Plaintiff,

v.

E&W DEVELOPMENT, LLP,


      Defendant.

_____/

## **COMPLAINT**

      Telemundo Network Group, LLC ("Tenant") sues E&W Development, LLP ("Landlord") and alleges as follows.

### **PARTIES, JURISDICTION, AND VENUE**

      1.      This is a breach of lease action arising out of Landlord's failure to return a security deposit.

      2.      This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) because:

          a.    the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs;

          b.    and, as outlined in paragraphs 3 through 7, the matter is between citizens of different states.

      3.      Plaintiff Tenant is a limited liability company.  It is a citizen of Delaware and Pennsylvania because its sole member—Telemundo Media, LLC—is a citizen of those states, as more fully set forth in paragraphs 4 through 6 below.

4.      Telemundo Media, LLC is a limited liability company.   The members of Telemundo Media, LLC are NBC Subsidiary (WTVJ-TV) LLC and NBCUniversal Media, LLC.

5.      NBC Subsidiary (WTVJ-TV) LLC is a limited liability company.  Its sole member is NBC Stations Management II LLC.

        a.      NBC Stations Management II LLC is a limited liability company.  The sole member of NBC Stations Management II LLC is NBC Stations Management LLC, a limited liability company.   The sole member of NBC Stations Management LLC is NBCUniversal Media, LLC, whose members—and their respective citizenships—are outlined below.

6.      NBCUniversal Media, LLC is a limited liability company.  Its sole member is NBCUniversal, LLC.

7.      NBCUniversal, LLC is a limited liability company.   The members of NBCUniversal, LLC are:

        a.      Comcast DW Holding, Inc., a Delaware corporation with its principal place of business in Pennsylvania; NBCUniversal Enterprise, Inc., a Delaware corporation with its principal place of business in Delaware; SNL Entertainment Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania; Comcast CCW Holdings, LLC, a limited liability company whose members are discussed further below; Comcast Navy Acquisition, LLC, a limited liability company whose members are discussed further below; Comcast Snap Holdings II, LLC, a limited liability company whose members are discussed further below; and Comcast Navy Contribution, LLC, a limited liability company whose members are discussed further below.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

b.  The members of Comcast CCW Holdings, LLC are Comcast Navy Acquisition, LLC, whose sole member is discussed further below, and Comcast Snap Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania.

c.  The sole member of Comcast Navy Acquisition, LLC is Comcast Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.

d.  The members of Comcast Snap Holdings II, LLC are Comcast Navy Acquisition, LLC (above) and Comcast Snap Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania.

e.  The members of Comcast Navy Contribution, LLC are: (i) E! Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania; (ii) Versus Holdings, LLC, a limited liability company whose members are discussed further below; (iii) Comcast Contribution Holdings, LLC, a limited liability company whose member is discussed further below; (iv) Comcast CHC, LLC, a limited liability company whose member is discussed more fully below; (v) Comcast SportsNet Philadelphia Holdings, LLC, a limited liability company whose members are discussed further below; and (vi) Comcast SportsNet New England Holdings, LLC, a limited liability company whose members are discussed further below.

f.  The members of Versus Holdings, LLC are: (i) Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in

3

Pennsylvania; and (ii) E! Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania.

g.   The sole member of Comcast Contribution Holdings, LLC is Comcast Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.

h.   The sole member of Comcast CHC, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.

i.   The members of Comcast SportsNet Philadelphia Holdings, LLC are: (i) Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania; and (ii) Comcast Spectator Holding Company, LLC, a limited liability company whose sole member is discussed further below.

j.   The sole member of Comcast Spectator Holding Company, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.

k.   The members of Comcast SportsNet New England Holdings, LLC are: (i) Comcast SportsNet NE Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania; and (ii) CSNNE Partner, LLC, a limited liability company whose sole member is discussed further below.

l.   The sole member of CSNNE Partner, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

8.      Defendant Landlord is a limited liability partnership.  Its sole member is Milton "Mark" Shlansky, who is a citizen of Florida.

9.      This Court has personal jurisdiction over Defendant Landlord because it is organized under the laws of Florida and its principal place of business is Florida.

10.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

11.     From 1993 through 2004, Landlord and Tenant entered into leases for various commercial properties located in Hialeah, Florida.

12.     As relevant here, Landlord and Tenant have entered into the following four leases:

a.  On March 29, 1989, Landlord and Tenant entered into a commercial lease for property at 2342 West Eighth Avenue, Hialeah, FL (the "2342 Lease") (attached as **Composite Exhibit A-1**).

b.  On April 1, 1993, Landlord and Tenant entered into a commercial lease for properties at 2290, 2340, 2375, 2470, and 2475 West Eighth Avenue, Hialeah, FL (the "2290-2475 Lease") (attached as **Composite Exhibit A-2**)

c.  On January 22, 2001, Landlord and Tenant entered into a commercial lease for property at 2250 West Eighth Avenue, Hialeah, FL (the "2250 Lease") (attached as **Composite Exhibit A-3**).

d.  On January 26, 2004, Landlord and Tenant entered into a commercial lease for property at 2200 West Eighth Avenue, Hialeah, FL (the "2200 Lease") (attached as **Composite Exhibit A-4**).

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

13.     In December of 2013, Landlord and Tenant entered into a lease extension agreement governing the four leases above (the "2013 Lease Extension") (attached as **Exhibit B**).

14.     Pursuant to the 2013 Lease Extension, Landlord held a total security deposit of $154,167.  Exhibit B at ¶3.   Specifically, the Landlord held security deposits attributable to each lease as follows:

      a.   For the 2342 Lease, $22,838;

      b.   For the 2290-2475 Lease, $78,950;

      c.   For the 2250 Lease, $30,771.

      d.   For the 2200 Lease, $21,608.

15.     On May 29, 2019, Landlord and Tenant entered into an agreement about work that Tenant was to perform on the leased properties before surrender of the properties (the "Letter Restoration Agreement") (attached as **Exhibit C**).  Under the Letter Restoration Agreement, prior to surrendering each property, Tenant agreed to perform the following restoration work at each property:

      a.   Reconfigure the Heating, Ventilation, and Air Conditioning ("HVAC") system;

      b.   Repair building stucco as per American Society for Testing and Materials;

      c.   Paint the building with two coats of regular paint; and

      d.   If, prior to surrender, the site plan was modified by Hialeah Planning Department to allow for additional parking, perform all restoration work at the properties in accordance with the approved revised plans.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

16.     In the Letter Restoration Agreement, the Landlord and Tenant agreed that surrender of the leased properties and expiration of the lease terms would occur once the Tenant delivered the following documentation to the Landlord for each leased property:

    a.  With respect to the plans submitted to the Hialeah Planning Department, a master permit as well as complete permits for general building, mechanical, electrical, and plumbing;

    b.  With respect to any liens filed against the property in connection with Tenant's restoration work, any lien waivers; and

    c.  A certificate of occupancy.

17.     On August 13, 2019, the Landlord and Tenant agreed to an additional lease extension (attached as **Exhibit D**).[1]

18.     Tenant performed all the work required by the Letter Restoration Agreement.

19.     Tenant delivered the requisite documentation to the Landlord for each leased property.

20.     On January 29, 2020, Tenant surrendered the leased properties.

21.     On January 29, 2020, Landlord confirmed that Tenant had surrendered the leased properties by signing a "SPACE SURRENDER AND KEY RETURN CONFIRMATION FORM" (attached as **Exhibit E**).

22.     On February 4, 2020, Tenant mailed a letter to Landlord's address, which is 1150 West 23rd Street, Hialeah, FL 33010.

---

[1] Though immaterial to the issues in this case, this extension contains handwritten markings from Landlord that Tenant did not sign or otherwise agree to.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

23.     In this letter, Tenant notified Landlord that Tenant had surrendered the leased properties and noted that Landlord should return the security deposits that it was holding.

24.     The Landlord did not return the security deposits.

25.     On May 29, 2020, Tenant mailed another letter to Landlord at the same address (attached at **Exhibit F**).

26.     In this letter, Tenant again notified Landlord that it had surrendered the leased properties and that Landlord should return the security deposits associated with those leased properties.

27.     In this same letter, Tenant further notified the Landlord that Landlord's failure to return the security deposits would constitute a breach of the parties' agreements, which included:

         a.   the 2342 Lease;

         b.   the 2290-2475 Lease;

         c.   the 2250 Lease;

         d.   the 2200 Lease;

         e.   the 2013 Lease Extension; and

         f.   the Letter Restoration Agreement

28.     The Landlord did not return the security deposits.

29.     On June 18, 2020, Tenant mailed another letter to Landlord at the same address (attached at **Exhibit G**).

30.     In this letter, Tenant once against notified Landlord that (i) Tenant had surrendered the leased properties; (ii) Landlord had failed to return the security deposits; and (iii) Landlord's failure to do so constitute a material breach of the parties' agreements, including the agreements noted in paragraphs 27(a) to 27(f).

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

31.    The Landlord did not return the security deposits.

32.    All conditions precedent to the filing of this action have been fulfilled, satisfied, waived, excused, or are futile.

33.    Tenant has retained the law firm of León Cosgrove, LLP and is obligated to pay the firm a reasonable fee.

## Count I
## (Breach of 2342 Lease)

34.    Tenant re-alleges and incorporates paragraphs 1 through 33 above as though full set forth herein.

35.    On March 29, 1989, Landlord and Tenant entered into the 2342 Lease.

36.    In December of 2013, Landlord and Tenant entered into the 2013 Lease Extension that extended the 2342 Lease and specified that Landlord was holding a $22,838 security deposit for the 2342 property.

37.    On May 29, 2019, Landlord and Tenant entered into the Letter Restoration Agreement.

38.    In the Letter Restoration Agreement, the parties agreed to the circumstances under which a surrender of the 2342 property would occur and the lease term would expire.

39.    Tenant surrendered the 2342 property on January 29, 2020.

40.    The Landlord has failed to return the security deposit.

41.    Landlord materially breached the parties' agreements, including the 2342 Lease, by failing to return the security deposit.

42.    On multiple occasions, Tenant provided Landlord with written notice of its breach.

43.    Nevertheless, Landlord has failed to return the Tenant's security deposit and remains in breach of the parties' agreements, including the 2342 Lease.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

44.     Tenant has satisfied all conditions precedent to bringing this action.

45.     As a direct, foreseeable, and proximate result of Landlord's breach of the 2342 Lease, Tenant has been injured and suffered damages in an amount to be determined at trial.

## Count II
### (Breach of 2290-2475 Lease)

46.     Tenant re-alleges and incorporates paragraphs 1 through 33 above as though full set forth herein.

47.     On April 1, 1993, Landlord and Tenant entered into the 2290-2475 Lease.

48.     In December of 2013, Landlord and Tenant entered into the 2013 Lease Extension that extended the 2290-2475 Lease and specified that Landlord was holding a $78,950 security deposit for the 2290-2475 property.

49.     On May 29, 2019, Landlord and Tenant entered into the Letter Restoration Agreement.

50.     In the Letter Restoration Agreement, the parties agreed to the circumstances under which a surrender of the 2290-2475 property would occur and the lease term would expire.

51.     Tenant surrendered the 2290-2475 property on January 29, 2020.

52.     The Landlord has failed to return the security deposit.

53.     Landlord materially breached the parties' agreements, including the 2290-2475 Lease, by failing to return the security deposit.

54.     On multiple occasions, Tenant provided Landlord with written notice of its breach.

55.     Nevertheless, Landlord has failed to return the Tenant's security deposit and remains in breach of the parties' agreements, including the 2290-2475 Lease.

56.     Tenant has satisfied all conditions precedent to bringing this action.

10

57.     As a direct, foreseeable, and proximate result of Landlord's breach of the 2290-2475 Lease, Tenant has been injured and suffered damages in an amount to be determined at trial.

## Count III
## (Breach of 2250 Lease)

58.     Tenant re-alleges and incorporates paragraphs 1 through 33 above as though full set forth herein.

59.     On January 22, 2001, Landlord and Tenant into the 2250 Lease.

60.     In December of 2013, Landlord and Tenant entered into the 2013 Lease Extension that extended the 2250 Lease and specified that Landlord was holding a $30,771 security deposit for the 2250 property.

61.     On May 29, 2019, Landlord and Tenant entered into the Letter Restoration Agreement.

62.     In the Letter Restoration Agreement, the parties agreed to the circumstances under which a surrender of the 2250 property would occur and the lease term would expire.

63.     Tenant surrendered the 2250 property on January 29, 2020.

64.     The Landlord has failed to return the security deposit.

65.     Landlord materially breached the parties' agreements, including the 2250 Lease, by failing to return the security deposit.

66.     On multiple occasions, Tenant provided Landlord with written notice of its breach.

67.     Nevertheless, Landlord has failed to return the Tenant's security deposit and remains in breach of the parties' agreements, including the 2250 Lease.

68.     Tenant has satisfied all conditions precedent to bringing this action.

69.     As a direct, foreseeable, and proximate result of Landlord's breach of the 2250 Lease, Tenant has been injured and suffered damages in an amount to be determined at trial.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## Count IV
## (Breach of 2200 Lease)

70.     Tenant re-alleges and incorporates paragraphs 1 through 33 above as though full set forth herein.

71.     On January 26, 2004, Landlord and Tenant into the 2200 Lease.

72.     In December of 2013, Landlord and Tenant entered into the 2013 Lease Extension that extended the 2200 Lease and specified that Landlord was holding a $21,608 security deposit for the 2200 property.

73.     On May 29, 2019, Landlord and Tenant entered into the Letter Restoration Agreement.

74.     In the Letter Restoration Agreement, the parties agreed to the circumstances under which a surrender of the 2200 property would occur and the lease term would expire.

75.     Tenant surrendered the 2200 property on January 29, 2020.

76.     The Landlord has failed to return the security deposit.

77.     Landlord materially breached the parties' agreements, including the 2200 Lease, by failing to return the security deposit.

78.     On multiple occasions, Tenant provided Landlord with written notice of its breach.

79.     Nevertheless, Landlord has failed to return the Tenant's security deposit and remains in breach of the parties' agreements, including the 2200 Lease.

80.     Tenant has satisfied all conditions precedent to bringing this action.

81.     As a direct, foreseeable, and proximate result of Landlord's breach of the 2200 Lease, Tenant has been injured and suffered damages in an amount to be determined at trial.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

    a.   General, actual, and compensatory damages in an amount to be determined at trial;

    b.   Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

    c.   Costs and attorneys' fees; and

    d.   Such other relief as the Court deems just and proper.


Dated: February 23, 2021

Respectfully submitted,

 **John R. Byrne**
Jordi C. Martínez-Cid
  Florida Bar No. 100566
John R. Byrne
  Florida Bar No. 126294
Email:   jmartinez-cid@leoncosgrove.com
Email:   jbyrne@leoncosgrove.com
Email:   lburns@leoncosgrove.com
Email:   cmanzano@leoncosgrove.com

**LEÓN COSGROVE LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:   305.740.1975
Facsimile:   305.437.8158

*Counsel for Plaintiff Telemundo
Network Group, LLC*

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM